## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT OWENSBORO

**DAVID STANFIELD**                                                      **PLAINTIFF**

**v.**                                             **CIVIL ACTION NO. 4:12CV-P54-M**

**LADONNA THOMPSON** *et al.*                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff David Stanfield filed a *pro se* complaint under 42 U.S.C. § 1983 proceeding *in forma pauperis*. After performing initial screening of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court allowed the individual-capacity claims for damages for alleged denial of medical and dental care to go forward against Defendant Herrington and gave Plaintiff an opportunity to amend his retaliation claim. All other claims against Defendant Herrington were dismissed from this action as was Defendant Thompson and all of the claims against her. Thereafter, Plaintiff filed an amended complaint. In the amended complaint, Plaintiff set forth his retaliation claim in more detail and added Major Willett as a Defendant in this action.

This matter is before the Court on cross motions for summary judgment filed by Defendants Herrington and Willett and by Plaintiff (DNs 27 & 40). The motions are ripe for review. For the following reasons, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment. The medical treatment claims will also be dismissed pursuant to 28 U.S.C. § 1915(e) on the additional grounds that they fail to state a claim upon which relief may be granted.

# I. FACTS

## A. RETALIATION

The events about which Plaintiff complains occurred while he was incarcerated at the Henderson County Detention Center [HCDC].  Plaintiff was incarcerated at the HCDC from January 30, 2012, until his transfer to the Daviess County Detention Center [DCDC] on July 4, 2012.  During his incarceration at the HCDC, Plaintiff was classified for Class D work and was primarily housed with the Class D work inmates in a minimum security portion of the detention center.

From 1996 until 2004, Plaintiff states he was incarcerated at the Luther Luckett Correctional Complex so that he could receive treatment for his bipolar disorder.  According to Plaintiff he had access to treatment there that was unavailable in a county jail facility. Immediately prior to being booked into the HCDC, Plaintiff reports he was incarcerated at the Woodford County Jail.  While there, Plaintiff sought and was granted an order by the Franklin Circuit Court to be transferred to a State Penal Institution.  The Franklin Circuit Court order is dated January 18, 2012, and directs that Plaintiff be placed in such a facility within 30 days of the order.  On January 30, 2012, Plaintiff was moved to the HCDC.

Since Plaintiff was not moved to a state facility as directed by the Franklin Circuit Court order, on February 24, 2012, Plaintiff filed a motion for contempt in state court.[1]  Plaintiff served a copy of the contempt motion on Defendant Herrington.  On February 28, 2012, Plaintiff was held in from his job and locked down in a higher security level cell.  His property was packed up

---

[1]Apparently, Plaintiff was unaware at that time that the Franklin Circuit Court had entered an order on February 17, 2012, that set aside its January 18, 2012, order directing Plaintiff's transfer to a state facility.

2

and brought to him.  According to Plaintiff, after Defendants had him pulled from work, Defendant Willett yelled at him, interrogated him, and threatened him.  On this same date, Plaintiff wrote a letter to Cpt. Amy Nelson, Class D Coordinator.  In the letter he requested to know what was going on since he had not been transferred to a state facility and was now locked down in the main jail.  In the letter, Plaintiff explained that the Franklin Circuit Court order was entered "because of my Mental Ill BiPolar I, Manic Depression, OCD Also so physical Health Problems and Dental."  Plaintiff states that the following day he was brought back to Defendant Willett's office.  Defendant Willett told him that he was going to put him back to work and yelled at him making statements to the effect that he was making sure Plaintiff was not mentally ill. Plaintiff contends that the lock down and the verbal interrogation, yelling, and threats were retaliation for filing the motion for contempt.

Defendants deny that the move was retaliatory.  According to Defendants, when Defendant Willett received the motion for contempt he had concerns about Plaintiff's mental health.  Defendant Willett "spoke with [Plaintiff] about these concerns and [Plaintiff] restated his mental health issues."  Defendant Willett made the decision to keep Plaintiff in from work and have him evaluated by the medical staff.  Plaintiff was placed in a higher security level cell so that this evaluation could be done.  Defendant Willett states that this was done for "the welfare and interest of [Plaintiff] and those he was around at work."  Defendant Willett's response to Plaintiff's grievance about this matter, dated contemporaneously with the events, reflects that Plaintiff was brought to the main facility and not allowed to work "for his safety & security and safety & security of the community."  The medical records reflect that, on February 29, 2012, Plaintiff was brought to medical for an evaluation "per request of Cpt. Willett."  Defendant Herrington has submitted an affidavit in which he provides that statements in Plaintiff's contempt

motion "raised concern about his mental health and safety to himself and others."  Plaintiff was returned to his job and regular cell after approximately 48 hours.  This is the first instance of retaliation about which Plaintiff complains.

Plaintiff raises a second instance of retaliation.  This second instance of retaliation involves Plaintiff's transfer out of the HCDC and into the DCDC.  Both parties agree that the transfer was implemented because of legal action brought by Plaintiff against Defendant Herrington.  Plaintiff contends that the DCDC is "the worst class D facility in Kentucky," and that this was a retaliatory transfer.  Defendant Herrington states that he was the one who made the arrangements to have Plaintiff transferred to the DCDC.  According to Defendant Herrington, "[i]t is our policy that if an inmate files a suit against me or the Henderson County Detention Center or staff concerning the conditions of his treatment, the inmate is transferred to another facility."  Defendant Herrington contends that Plaintiff was "treated like any other inmate in that regard."

### B.  MEDICAL TREATMENT

Plaintiff asserts that Defendants "did not provide him with proper medical treatment while At their facility."  He raises three issues regarding his medical treatment while at the HCDC.  According to Plaintiff, "[h]is main issue was that they showed a 'deliberate indifference' to his serious locked up bowel problem."  He alleges that he began filing complaints about this problem beginning on February 1, 2012, and that "for a period of Twenty (20) Days [Defendants did] nothing but give magnesia."  Plaintiff states that he "had to use his own hand to remove waste from his body do to the failure of the medical staff at the Henderson Co. Jail to Act And render proper medical treatment."  In his complaint Plaintiff states that in removing the waste he caused bleeding.

4

The records from the HCDC provided by Defendants reflect that Plaintiff submitted his first inmate sick call slip about his bowel problem on February 1, 2012.  He was seen by someone in the medical department on February 2, 2012, and that same day a physician ordered Bisacodyl, a medication used to treat constipation, for Plaintiff.  Plaintiff submitted inmate sick call slips on February 13 and 15, 2012.  On Plaintiff's inmate sick call slip from February 13, 2012, he complained that his bowels were locked and would not move.  On Plaintiff's February 15, 2012, inmate sick call slip Plaintiff wrote, "My Bowels Are Locked up And Bleeding."  Plaintiff was seen in medical on February 16, 2012, and examined.  At that time, the records reflect that Plaintiff reported that his last bowl movement was three days ago.  That same day, February 16, 2012, a physician ordered Milk of Magnesia to be given to Plaintiff until he had a bowel movement.  On February 20, 2012, Plaintiff completed an inmate sick call slip stating that he was following up on his bowels and they had not moved.  The medical records reflect that on February 22, 2012, Plaintiff was seen by medical staff and reported that he had not had a bowel movement in a week.  Plaintiff was examined and given more Milk of Magnesia.  The following day, according to the medical records, Plaintiff reported that he had a bowel movement.  At that time, he was again given more Milk of Magnesia.  A subsequent medical note dated February 29, 2012, references that Plaintiff continues to complain of constipation.  This time Milk of Magnesia with mineral oil and a stool softener was ordered for Plaintiff.

Defendants have provided two affidavits that address Plaintiff's medical care and treatment.  The first affidavit is that of Henrietta Lawless, the Medical Team Administrator at the HCDC.  She states that she has reviewed and is familiar with Plaintiff's medical records while at the HCDC.  She states that none of the medical problems about which he complained were considered a serious medical need.  As for his constipation, she affirms that Plaintiff was treated

as soon as he complained and with appropriate measures.  Defendant Herrington has also submitted an affidavit which addresses Plaintiff's medical care and treatment while at the HCDC. Defendant Herrington states that "Southern Health Partners contracts for the medical services at the Henderson County Detention Center."  He further affirms that he reviewed Plaintiff's medical complaints and "treatment shows that the medical staff responded promptly and adequately to Mr. Stanfield's complaints."

The second medical problem about which Plaintiff complains involves an alleged failure to treat his tooth problem.  As for the tooth problem, Plaintiff states that he filled out a medical request about a tooth that needed to be pulled.  He states that he "was seen in medical but they told him he had to be At the facility for Thirty (30) Days before they would do anything." Plaintiff states that he was never given any type of treatment for "his Abcess tooth."  He states that the infection could have gone into his blood stream causing "all kinds of medical problems which could have endangered the plaintiff's life."  According to the affidavit of Henrietta Lawless, there is no HCDC record of a complaint from Plaintiff about tooth pain.  Further, she states that absent an abscess, it is common to monitor tooth pain "to determine if it is an acute symptom, which it often is."

Finally, Plaintiff complains about his treatment for his bipolar disorder for which he takes "Lithimum 1200 mg A day."  When Plaintiff was booked into the HCDC, an order for lithium transferred with him.  The physician's order sheet contains a January 30, 2012, order for lithium. On February 5, 2012, Plaintiff complained to the medical staff that he was having difficulty focusing and thought his lithium was low.  The medical record from the HCDC reflects that lab work was done at Plaintiff's previous facility and that the HCDC was awaiting these records.  On March 6, 2012, an order to obtain a lithium level was entered, and Plaintiff's blood was drawn for

6

his lithium level check on March 8, 2012.  According to Defendant Herrington, the blood was not drawn until this time because Plaintiff's previous medical orders directed that his lithium level be checked in six months.  The result of Plaintiff's blood test revealed a slightly high lithium level.[2]

## II.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Id*. at 323.  "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case."  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  In determining whether summary judgment is appropriate, the Court must resolve all ambiguities, and draw all reasonable inferences, against the moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 399 (6th Cir. 2009).

---

[2]In their motion Defendants also argue that Plaintiff has failed to exhaust his administrative remedies as to all claims.  Plaintiff contends that he did exhaust his administrative remedies.  The Court will not address the exhaustion issue since there are other grounds which necessitate the granting of summary judgment in this action.

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Id*. The moving party, therefore, is "entitled to a judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## III. ANALYSIS

### A. RETALIATION CLAIMS

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

#### 1. First Instance of Retaliation

In his first claim of retaliation, Plaintiff alleges that the retaliation was in response to him filing a motion for contempt in state court. "A prisoner's right of access to the courts is limited to

8

direct criminal appeals, habeas corpus applications, and civil rights claims challenging the conditions of confinement." *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996) and *Thaddeus-X v. Blatter*, 175 F.3d at 391).  Plaintiff's right of access may not extend to the contempt motion he filed, thus failing to establish that he was engaged in protected conduct.

Assuming, without deciding, that Plaintiff has alleged he was engaging in protected conduct, Plaintiff must put forth evidence that the alleged adverse actions taken against him would deter a person of ordinary firmness from engaging in such conduct.  Plaintiff alleges that the adverse actions taken against him in the first allegedly retaliatory incident were his transfer from his minimum housing cell to a lock-down cell in the main facility where he remained for approximately 48 hours, removal from his prison job for two days, and being yelled at, threatened, and interrogated about the contempt motion he filed.

An inmate has no right to be free from verbal abuse.  *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987).  Minor threats do not rise to the level of a constitutional violation.  *Thaddeus-X v. Blatter*, 175 F.3d at 398.  Thus, the alleged verbal abuse and threats do not constitute a sufficiently adverse action.

According to Plaintiff, the adverse actions against him also included a transfer from his minimum security cell to a lock-down cell and being held in from his job for two days.  Plaintiff makes no complaint that the conditions in this cell were harsh; his allegation solely deals with the additional restrictions placed upon him for these two days.  However, he fails to provide any details about the additional restrictions.  Often "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir.

2012). The Court, for purposes of the summary judgment motions will presume that Plaintiff has shown a sufficiently adverse action.

The third element of a retaliation claim is a causal connection between the protected conduct and the adverse action. Assuming Plaintiff has succeeded in showing that his protected conduct resulted in the alleged harm of being transferred for 48 hours, the burden then shifts to Defendants to "show that [they] would have taken the same action in the absence of the protected activity." *Thaddeus-X v. Blatter*, 175 F.3d at 399; *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005). If an alleged adverse action was taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *See Thaddeus-X v. Blatter*, 175 F.3d at 399 ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."); *see also Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir. 1984) (the conclusion that the state action would have been taken in the absence of improper motives "will frequently be readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage") (citation and quotation marks omitted).

Defendants do not dispute that Plaintiff was removed from his minimum security cell and his job for a period of about 48 hours. However, Defendants have provided sworn affidavits in which they assert that statements made by Plaintiff and statements made in his contempt motion caused Defendant Willett concern about Plaintiff's mental health that precipitated these changes. According to Defendants' affidavits, Plaintiff was moved to a higher security level cell for the purpose of evaluating his mental status and to protect Plaintiff and other inmates. The medical record confirms that Plaintiff was seen in medical on February 29, 2012, per request of Defendant

10

Willett.  Plaintiff himself states that on the day he was released back to his minimum security cell, he was first seen by "Medical" who "Ask him Three (3) to Four (4) Questions concerning his mental health."

"Once the defendants put forth evidence, [Plaintiff is] required to present 'significant probative evidence' to defeat the motion for summary judgment on this ground."  *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248).  It is clear, and Plaintiff has produced no significant probative evidence to the contrary, that Defendants would have transferred Plaintiff for the 48 hours for non-retaliatory and proper reasons.  Thus, Defendants are entitled to summary judgment in their favor on this claim.

### 2. *Second Instance of Retaliation*

As to the second instance of retaliation, Plaintiff alleges he was transferred to the DCDC in retaliation for filing the present lawsuit.  Plaintiff has a constitutionally protected right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Thaddeus-X v. Blatter*, 175 F.3d at 391.  Thus, Plaintiff has shown the first element of a constitutional retaliation claim.

Plaintiff must next show that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in the protected conduct.  Plaintiff states that the DCDC is "the worst class D facility in Kentucky."  He makes only this general allegation.  He fails to set forth any facts as to how the DCDC differs from the HCDC and what effect the transfer had upon him.  The law is clear that inmates have no constitutional right to be incarcerated in any particular institution or a particular part of an institution unless the state has created a liberty interest in remaining at a particular institution.  *Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S.

11

215, 223-229 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986).  This is not the case in Kentucky where transfer of prisoners is within the discretion of the corrections cabinet.  KY. REV. STAT. § 197.065.

Furthermore, the Sixth Circuit has repeatedly held that a prison transfer is generally not a sufficiently adverse action to deter a person of ordinary firmness from engaging in protected conduct.  *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006) (transfer of inmate to another prison in the absence of "foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts" is not adverse action); *Jewell v. Leroux*, 20 F. App'x 375 (6th Cir. 2001) (transfer to the general population of another prison is not considered sufficiently adverse); *Geiger v. Prison Realty Trust, Inc.*, 13 F. App'x 313 (6th Cir. 2001) (prisoner failed to allege that his transfer to another institution prevented or deterred him from continuing to write grievances and file lawsuits); *Friedman v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001) ("It seems clear, however, that a mere transfer to another institution of the same security level, with no other aggravating factors, is not sufficiently adverse to deter a person of ordinary firmness from engaging in the exercise of protected First Amendment activity."); *Goddard v. Ky. Dep't of Corr.*,  Nos. 99-5348, 99-5971, 2000 WL 191758 (6th Cir. Feb. 7, 2000) (transfer of an inmate to the general population of another prison because of the inmate's filing of numerous grievances is not considered sufficiently adverse). Plaintiff has failed to show a sufficiently adverse action for purposes of a constitutional retaliation claim.

As discussed above in regard to Plaintiff's first claim of retaliation, the third element of a retaliation claim is a causal connection between the protected conduct and the adverse action. Even if Plaintiff had succeeded in showing that his protected conduct resulted in the sufficiently

12

adverse action being taken against him, the burden then shifts to Defendants to "show that [they] would have taken the same action in the absence of the protected activity." *Thaddeus-X v. Blatter*, 175 F.3d at 399. If an alleged adverse action was taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *See id.* at 399 ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."); *see also Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir. 1984) (the conclusion that the state action would have been taken in the absence of improper motives "will frequently be readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage") (citation and quotation marks omitted).

Defendants do not dispute that Plaintiff was transferred as a result of the filing of the present lawsuit. Defendant Herrington has submitted a sworn affidavit stating that the transfer was not for retaliatory reasons, but pursuant to policy which directs that anytime an inmate brings suit against the HCDC, its staff, or the jailer, the inmate is transferred to another facility. Plaintiff was transferred to another Class D facility. It is clear, and Plaintiff has failed to meet his burden of providing significant probative evidence to the contrary, that Defendants would have transferred Plaintiff for proper reasons. *See Napier v. Laurel Cnty., Ky.*, 636 F.3d at 225.

For the above reasons, Defendants are entitled to summary judgment in their favor on this second retaliation claim.

### B.  MEDICAL TREATMENT CLAIMS

#### 1.  Causal Connection

Although the lack of a causal connection between the Defendants and the alleged unconstitutional medical treatment claims was not addressed by the parties in this case, if Plaintiff is proceeding *in forma pauperis*, the Court is free to dismiss a claim at any time if it determines that Plaintiff has failed to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2).

To state a claim under § 1983, a plaintiff must allege that 1) a right secured by the Constitution or a federal statute has been violated, and 2) the violation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010).  A complaint filed under § 1983 must show a causal connection between each of the named Defendants and the alleged constitutional deprivation.  A § 1983 complaint must allege that specific conduct by each Defendant was the proximate cause of the constitutional injury.  *King v. Massarweh*, 782 F.2d 825, 828-29 (9th Cir. 1986).  "Congress did not intend § 1983 liability to attach where causation is absent."  *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  To establish causation, Plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged."  *Id.*  When the theory of causation is a matter of pure speculation and is nothing more than an hypothetical argument, the pleadings are insufficient to sustain a compensable § 1983 claim.  *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994).

As to his medical treatment claims, Plaintiff fails to connect the alleged Eighth Amendment claims to either of the Defendants.  He provides no factual assertions alleging any acts or omissions by Defendants that would connect them to any of the alleged wrongdoing

14

regarding his medical treatment.  For this reason, all of his medical treatment claims fail to state a claim upon which relief may be granted, and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Eighth Amendment

Even considering the substance of the Eighth Amendment claims, they fail.  The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from deliberate indifference to an inmate's serious medical needs since such indifference constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Flanory v. Bonn*, 604 F.3d at 253.  "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106; *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).

An Eighth Amendment claim consists of both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012); *Flanory v. Bonn*, 604 F.3d at 253.  The objective component requires that the medical need be sufficiently serious.  *Reilly v. Vadlamudi*, 680 F.3d at 624; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 896 (6th Cir. 2004); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992).  This component is contextually driven and is responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. at 103).  The subjective component requires that the official's conduct be deliberately indifferent to Plaintiff's needs.  *Farmer v. Brennan*, 511 U.S. at 834-37; *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Hunt v. Reynolds*, 974 F.2d at 735.  Deliberate indifference is a "state of mind more blameworthy than negligence." *Farmer v. Brennan,* 511 U.S. at 835.

15

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. at 105-06.  Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm. *Reilly v. Vadlamudi*, 680 F.3d at 624; *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Furthermore, a difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation.  *Estelle v. Gamble*, 429 U.S. at 107; *Shofner v. Comacho*, No. 99-6717, 2000 WL 1359633, at *2 (6th Cir. Sept. 14, 2000); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### a. Claim Regarding Plaintiff's Tooth Problem

Regarding his tooth problem, Plaintiff states that he filled out a medical request about a tooth that needed to be pulled.  He states that he "was seen in medical but they told him he had to be At the facility for Thirty (30) days before they would do Anything."  Plaintiff states that he was never given any type of treatment for "his abcess tooth."  He states that the infection could have gone into his blood stream causing "all kinds of medical problems which could have endangered the plaintiff's life."

Plaintiff has failed to present evidence that the tooth problem about which he states he complained was sufficiently serious to meet the objective component of an Eighth Amendment claim.  He simple states that his tooth, which he subjectively believed to be abscessed, needed to be pulled; however, nothing was done about his tooth problem.  Plaintiff presents no evidence of pain or any harm resulting from the complained about tooth.  The medical records of Plaintiff's care and treatment while at the HCDC contain no notes regarding Plaintiff making any complaints about his tooth.  Nor is there any evidence that Plaintiff has been harmed in any way as a result of

16

this tooth problem.  There is nothing in the record to support that the tooth problem was a serious medical problem.

It is clear from other cases that have considered inmate complaints of the denial or delay of medical treatment that Plaintiff's dental problem does not constitute a serious medical need. *See Wright v. Taylor*, 79 F. App'x 829 (6th Cir. 2003) (plaintiff's lack of evidence that a delay in treatment of his decaying tooth caused any detrimental effect failed to establish that his tooth was a serious medical problem); *Tyler v. Rapone*, 603 F. Supp. 268, 271 (E.D. Pa. 1985) (toothache does not qualify as a serious medical need).  Thus, Defendants are entitled to summary judgment in their favor on this claim.

### b. Bowel Problem

As for his constipation, the medical records reflect that Plaintiff submitted inmate sick call slips about his lack of bowel movements on February 1, 13, 15, and 20, 2012.  Although he alleges that nothing was done to treat this problem, he admits that he was given "magnesia." According to the medical records, on February 2, 2012, Plaintiff was seen by medical and a physician ordered Bisacodyl, a medication used to treat constipation, for Plaintiff.  Plaintiff completed an inmate sick call slip on February 5, 2012, but did not mention any problem with his bowels.  Plaintiff's constipation, he alleges, eventually led him to "use his own hand to remove waste from his body."  In his complaint Plaintiff states that in removing the waste he caused bleeding.  On Plaintiff's inmate sick call slip from February 13, 2012, he complained that his bowels were locked and would not move, there was no mention of bleeding.  On Plaintiff's February 15, 2012, inmate sick call slip Plaintiff wrote, "My Bowels Are Locked up And Bleeding."  Plaintiff was seen in medical on February 16, 2012, and examined.  At that time, the records reflect that Plaintiff reported that his last bowl movement was three days ago.  That same

17

day, February 16, 2012, a physician ordered Milk of Magnesia to be given to Plaintiff until he had

a bowel movement.  On February 20, 2012, Plaintiff completed an inmate sick call slip stating

that he was following up on his bowels and they had not moved.  The medical records reflect that

on February 22, 2012, Plaintiff was seen by medical staff and reported that he had not had a

bowel movement in a week.  Plaintiff was examined and given more Milk of Magnesia.  The

following day, according to the medical records, Plaintiff reported that he had a bowel movement.

At that time, he was again given more Milk of Magnesia.

Plaintiff's complaints of constipation do not meet the objective component of an Eighth

Amendment violation.  The constipation about which Plaintiff complains does not rise to the level

of a serious medical need.  He does not state that he was in pain, and none of the inmate sick call

slips completed by Plaintiff state that he was experiencing pain.  The February 16, 2012, medical

form completed by a member of the medical team does indicate that Plaintiff reported having

abdominal and rectal pain that day.   However, this is the only mention of such pain, and there is

no indication that the pain was severe in any manner.  Although Plaintiff states that he caused

bleeding from removing his feces, there is no indication that the constipation caused any harm to

Plaintiff other than some minor pain or discomfort.

Several courts have determined that allegations like those Plaintiff makes in this case

simply do not rise to the level of an objectively serious medical need.  *See Henderson v. Virginia*,

No. 7:07-cv-00266, 2008 WL 204480, at *15 (W.D. Va. Jan. 23, 2008) (plaintiff's allegations-

that he suffered from "brief episodes of vomiting, stomach pain, and difficulty breathing"-were

not sufficiently serious to give rise to an Eighth Amendment claim); *Moy v. Evans*, No. 06-272-

GPM, 2007 WL 315088, at *2 (S.D. Ill. Jan. 31, 2007) (plaintiff's claim that he suffered from

constipation and accompanying pain, along with the failure to proffer any information regarding a

18

diagnosis or condition, failed to constitute a serious medical need); *Ross v. McGinnis*, No. 00-CV-0275E(SR), 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) (holding that an inmate's complaints of abdominal pain, vomiting, heartburn, constipation, body odor, and extreme body heat did not constitute a serious medical need).

It is also clear that Plaintiff has failed to satisfy the objective component of this Eighth Amendment claim. The objective component requires that Defendants' conduct be deliberately indifferent to Plaintiff's needs. The records reflect that each time Plaintiff completed an inmate sick call slip about his bowel problem, he was seen by the medical staff within three days at the most. The medication records reflect that a physician had ordered Plaintiff to receive certain medications until he had a bowel movement. Although he seems to contend that Defendants should have done more than prescribe "magnesia," Plaintiff did respond to this treatment. Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm. *Reilly v. Vadlamudi*, 680 F.3d at 624; *Acord v. Brown*, 1994 WL 679365, at *2; *Mendoza v. Lynaugh*, 989 F.2d at 195. Furthermore, a difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Estelle v. Gamble*, 429 U.S. at 107; *Shofner v. Comacho*, 2000 WL 1359633, at *2; *Sanchez v. Vild*, 891 F.2d at 242. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

For these reasons, Defendants are entitled to summary judgment in their favor on this claim.

19

### c. *Bipolar Disorder*

Concerning Plaintiff's bipolar disorder, it is unclear as to what he is alleging violated his Eighth Amendment right.  He makes only a general conclusory statement in his complaint regarding his bipolar disorder and lithium.  Therein, he states, "The plaintiff request treatment over his BiPolar that he takes Lithimum 1200 mg A day And Defendant, Ron Herrington refused."  When Plaintiff was booked into the HCDC, an order for lithium transferred with him.  The physicians order sheet contains a January 30, 2012, order for lithium.  On February 5, 2012, Plaintiff complained to the medical staff that he was having difficulty focusing and thought his lithium was low.  The medical records from the HCDC reflect that lab work was done at Plaintiff's previous facility and that the HCDC was awaiting these records.  On March 6, 2012, an order to obtain a lithium level was entered, and Plaintiff's blood was drawn for his lithium level check on March 8, 2012.  According to Defendant Herrington, the blood was not drawn until this time because Plaintiff's previous medical orders directed that his lithium level be checked in six months.  The result of Plaintiff's blood test revealed a slightly high lithium level.  If Plaintiff is complaining that his blood levels for lithium were not timely drawn, his claim fails.  Defendants have provided an explanation for the delay in drawing lithium levels.  According to Defendants, the levels were not to be drawn until that time.  Plaintiff has failed to proffer any argument that contradicts Defendants' explanation.  Even if the delay was not appropriate, a delay in medical treatment does not constitute an Eighth Amendment violation unless there has been deliberate indifference which results in substantial harm.  *Reilly v. Vadlamudi*, 680 F.3d at 624; *Acord v. Brown*, 1994 WL 679365, at *2; *Mendoza v. Lynaugh*, 989 F.2d at 195.  Plaintiff has not shown any harm as a result of the "delay" in drawing his lithium level.

For these reasons, Defendants are entitled to summary judgment in their favor on this claim.

### IV.  CONCLUSION AND ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 27) is **GRANTED** and that Plaintiff's motion for summary judgment (DN 40) is **DENIED**.

**IT IS FURTHER ORDERED** that the medical treatment claims are also **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they fail to state a claim upon which relief may be granted.

The Court will enter a separate Judgment consistent with this Memorandum Opinion and Order.

Date:  March 8, 2013

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Counsel of record
4414.003

21